**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deborha D. Childers, | No. CV-13-00676-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, | |
| Defendant. | |

Plaintiff Deborha Childers seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.     BACKGROUND.**

   **A.     Factual Background.**

Plaintiff was born in September 1950. She testified at her hearing that she has a B.A. in Business Administration and worked in the past as a controller for a car dealership. The ALJ found that Plaintiff suffered from several severe impairments. A.R. 15. The ALJ also found that the impairments were severe and will continue to cause more than minimal work-related functional limitations. A.R. 15.

   **B.     Procedural History.**

On August 6, 2009, Plaintiff applied for disability insurance benefits, alleging disability beginning July 1, 2007. The claim was denied initially on September 29, 2009,

and upon reconsideration on March 25, 2010. Thereafter, the claimant filed a written request for a hearing on May 13, 2010. 20 C.F.R. 404.929 *et seq*. On November 2, 2011, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On November 30, 2011, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.

## II.   STANDARD OF REVIEW.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## III.   FIVE-STEP SEQUENTIAL EVALUATION.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant

has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2012, and that she has not engaged in substantial gainful activity since July 1, 2007. At step two, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia and restless leg syndrome; osteoporosis; osteoarthritis; migraine headaches; balance problems; neck pain radiating to left shoulder; irritable bowel syndrome; status post cataract surgery (2008); and status post cervical cryosurgery (2010). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.

At step four, the ALJ found that Plaintiff:

> Ha[d] the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) except for the following limitations: the claimant is capable of occasionally climbing ramps and stairs, balancing, stooping, crouching, crawling, and kneeling; but is precluded from climbing ladders, ropes, and/or scaffolds. The claimant is to avoid concentrated exposure to the use of moving machinery and to unprotected heights.

A.R. 17-18. The ALJ further found that Plaintiff is able to perform her past relevant work as a controller because it does not require the performance of work-related activities precluded by her RFC. A.R. 23. As such, the ALJ did not proceed to step five.

**IV.    ANALYSIS.**

Plaintiff argues that the ALJ's decision is defective for four reasons: (1) the ALJ failed to set forth a function-by-function assessment of residual capacity; (2) the ALJ erroneously weighed medical source evidence; (3) the ALJ improperly evaluated Plaintiff's credibility and discounted her subjective testimony; and (4) the ALJ failed to properly consider the third party report of Plaintiff's husband, Donald Childers. The Court will address each argument below.

**A.    Failure to Set Forth a Function-by-Function Assessment of RFC.**

Plaintiff asserts that the ALJ committed legal error by failing to set forth a more detailed function-by-function assessment of her RFC. Doc. 17 at 8; SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996). She argues that the ALJ's RFC is deficient for a number of reasons: the ALJ did not make specific findings as to the length of time that Plaintiff can sit, stand, or walk; the ALJ did not make specific findings as to the weight Plaintiff can lift or carry; the RFC does not discuss the frequency or severity of Plaintiff's migraine headaches; the RFC does not discuss whether rest breaks or absences from work are required due to Plaintiff's pain symptoms; and the RFC does not discuss Plaintiff's difficulty in maintaining focus, reliability, attention, and concentration. Doc. 17 at 8. Plaintiff appears to assert that SSR 96-8p requires the ALJ to make findings and craft an RFC with respect to each limitation supported by evidence in the record. *Id*. The Court disagrees.

Plaintiff argues that it was improper for the ALJ to express Plaintiff's RFC in terms of a category of work – "sedentary work" – even though the ALJ went on to articulate additional limitations to the category. *Id*. at 9. The Ninth Circuit, however, has interpreted SSR 96-8p as permitting the use of categories such as "sedentary" in defining a claimant's RFC. *See Buckner-Larkin v. Astrue*, 450 F. App'x 626, 627 (9th Cir. 2011)

(finding that ALJ expression of RFC as "sedentary" accords with SSR 96-8p because the definition of "sedentary" includes well-defined function-by-function parameters).

In this case, the ALJ found that Plaintiff had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a)."  A.R. 17.  According to the Code of Federal Regulations:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary to carry out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 CFR 404.1567(a).  The ALJ's expression of the RFC as "sedentary work," when understood in terms of its predetermined function-by-function parameters, provides many of the limitations that Plaintiff claims are lacking.  In addition, after introducing the RFC, the ALJ set forth a detailed discussion of the medical evidence in which he addressed each of the other limitations that Plaintiff claims should have been reflected in the RFC.  Because the ALJ provided a thorough discussion of the evidence explaining how he resolved material inconsistencies and ambiguities in the record, the Court concludes that the ALJ did not commit legal error.  *See Mason v. Comm'r of Soc. Sec.*, 379 F. App'x 638, 639 (9th Cir. 2010) ("The ALJ is not required, as [Plaintiff] contends, to engage in a function-by-function analysis under SSR 96-8p.  SSR 96-8p requires only that the ALJ discuss how evidence supports the [RFC] assessment and explain how the ALJ resolved material inconsistencies or ambiguities in evidence[.]").

**B.    Weighing Medical Source Evidence.**

Plaintiff argues that the ALJ failed to articulate sufficient reasons for discounting the opinions of four treating physicians and for crediting the opinions of non-examining physicians.  Doc. 17 at 9.  Many of Plaintiff's objections are simply invitations to reconsider the balance of evidence in the record, which is not the Court's role at this stage of the proceedings.  The ALJ's decision will be set aside only if it is not supported

by substantial evidence or is based on legal error. *Lewis*, 236 F.3d at 517 n.13. The Court concludes that the ALJ did not commit legal error.

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). The opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons if it is not contradicted by another doctor's opinion. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22.

### 1. Thomas Perry, M.D.

Plaintiff argues that the ALJ committed legal error by improperly discounting the opinion of her treating cardiologist, Dr. Thomas Perry, M.D. Doc. 17 at 11. On January 3, 2011, Dr. Perry completed a check-the-box form opining that, due to fatigue, diarrhea, and dizziness, Plaintiff was unable to perform eight hours of work per day for five days a week. A.R. 761-64. Dr. Perry opined that Plaintiff experiences headaches

once per day; irritable bowel syndrome twice per week; and "other" impairments 1-15 times per day without specifying what the "other" impairments were. A.R. 761. He indicated that Plaintiff experienced shortness of breath, vertigo/dizziness, nausea, fatigue, and pain that were exacerbated by stress and physical activity. Dr. Perry also opined that Plaintiff could sit less than two hours, lift less than ten pounds, stand or walk less than two hours, and carry less than ten pounds during an eight hour work day. A.R. 763. A vocational expert testified at Plaintiff's administrative hearing that an individual with such limitations would be unable to sustain full time competitive work. A.R. 67. The ALJ accorded Dr. Perry's opinion little weight. A.R. 22.

Dr. Perry's medical opinion was contradicted by the opinions of Drs. Green, Marella, and Disney, each of whom is a non-examining physician who opined that Plaintiff had abilities greater than those in Dr. Perry's opinion. A.R. 21. Because Dr. Perry's opinion was contradicted by these doctors, the ALJ could discount it for specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31.

In giving Dr. Perry's opinion little weight, the ALJ stated that the severity of Dr. Perry's "opined work related physical restrictions is not supported by the medical evidence of record." A.R. 22. The ALJ explained that Plaintiff's diagnostic findings are mild and unremarkable (A.R. 264, 327, 381, 493, 653, 658, 734, 826, 828, 829, 831, 965); physical examinations were consistently normal, with few trigger points (A.R. 323, 326, 331, 334, 340, 342, 344, 353, 369, 370, 372, 378, 410, 414, 421, 426, 439, 449, 451, 544, 547, 551, 554, 558, 560, 563, 566, 569, 575, 578, 581, 585, 589, 592, 596, 599, 664, 693, 743, 745, 746, 750, 752, 767, 797, 822, 895, 909, 920, 953); Plaintiff has repeatedly indicated that her medications are effective and denied any side effects (A.R. 323, 338, 345, 770, 875, 956); Plaintiff testified to activities of daily living far beyond the restrictions in Dr. Perry's opinion, including swimming, caring for her elderly mother, and managing her household (A.R. 488, 923); the treatment record indicates that her impairments are improving or stabilized (A.R. 323, 326, 327, 331, 340, 341, 343, 344,

467, 469, 744, 746, 747, 895, 907); and Dr. Perry is Plaintiff's cardiologist and has indicated that Plaintiff has no cardio limitations (A.R. 329-30, 646-47).

The ALJ's statements regarding the weight he accorded Dr. Perry's opinion are found on page 10 of his decision (A.R. 22), and his detailed discussion of the medical evidence is found primarily on pages 6-8 of his decision (A.R. 18-20). Although this organization is not ideal, the decision makes clear that the ALJ relied on record evidence to support all of the reasons listed in his discussion of Dr. Perry's opinion. The discussion of medical records on pages 6-8 addresses the ALJ's findings in detail, with numerous citations to the record. The Court finds the ALJ's explanation to be sufficiently clear to understand the basis for his decision.

The ALJ's detailed treatment of the medical evidence confirms that the specific and legitimate reasons that he identified are supported by substantial evidence. Plaintiff vigorously argues that the ALJ committed legal error by relying on the medical opinions of non-treating physicians to discount Dr. Perry's opinion. Doc. 17 at 17. Although Plaintiff is correct that ALJs must generally accord greatest weight to the medical opinion of a treating physician and must accord reduced weight to non-treating and non-examining physicians, the contradicted opinions of treating physicians can be discounted for specific and legitimate reasons supported by substantial evidence. Plaintiff also argues that a lack of objective data is not a proper basis for rejecting treating physician opinions as to the effect of chronic widespread pain associated with fibromyalgia. Doc. 17 at 12; *see Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (finding it legal error to "effectively require[e] 'objective' evidence for a disease that eludes such measurement."). But the ALJ relied on more than a lack of objective data. He also relied on reports from physicians and Plaintiff herself that her condition was improving. The ALJ also relied on evidence indicating that Plaintiff's medication was effective at managing pain. Each of these is a specific, legitimate, and permissible reason to discount Dr. Perry's opinion as to Plaintiff's fibromyalgia. The Court concludes for the reasons

outlined above that the ALJ's decision to discount Dr. Perry's medical opinion was not legal error.

### 2. Jason Swigert, M.D.

Plaintiff argues that the ALJ failed to articulate sufficient reasons for giving limited weight to the opinion of her treating physician, Dr. Jason Swigert, M.D. Doc. 17 at 11. On October 24, 2011, Dr. Swigert completed a check-the-box form opining that, due to chronic pain in her back, neck, and full body, fibromyalgia, chronic fatigue syndrome, severe depression, and restless leg syndrome, Plaintiff was unable to perform eight hours of work per day for five days a week. A.R. 961-62. Dr. Swigert opined that Plaintiff could sit less than two hours, lift more than 15 pounds but less than 20 pounds, stand or walk less than two hours, and carry more than 10 pounds but less than 15 pounds. A.R. 961. A vocational expert testified at Plaintiff's administrative hearing that an individual with such limitations would be unable to sustain full time competitive work. A.R. 67-68. The ALJ accorded Dr. Swigert's opinion little weight. A.R. 23.

Dr. Swigert's medical opinion was contradicted by the opinions of Drs. Green, Marella, and Disney, each of whom opined that Plaintiff had abilities that were greater than those in Dr. Swigert's opinion. A.R. 21. The ALJ therefore could discount Dr. Swigert's opinion for specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31.

In giving Dr. Swigert's opinion little weight, the ALJ stated that the severity of Dr. Swigert's "opined work related physical restrictions is not supported by the medical evidence of record, including Dr. Swigert's treatment records." A.R. 22-23. The ALJ indicated that the same evidence in the record that undermines Dr. Perry's opinion also undermines Dr. Swigert's opinion. Plaintiff offers no reasons why the ALJ's proffered reasons are not specific or legitimate as to Dr. Swigert's opinion. The Court concludes for the same reasons outlined above that the ALJ's decision to discount Dr. Swigert's medical opinion was not legal error.

### 3. Nirmala Aryal, M.D.

Plaintiff argues that the ALJ committed legal error by improperly discounting the opinion of her treating neurologist, Dr. Nirmala Aryal, M.D. Doc. 17 at 15. On September 28, 2011, Dr. Aryal completed a check-the-box form opining that, due to headaches that last 3 hours or more, Plaintiff had impairments that limited her ability to perform work related activities. A.R. 949-50. Dr. Aryal opined that these headaches occurred twice per week and could not be relieved with rest or medication. A.R. 949. A vocational expert testified at Plaintiff's administrative hearing that an individual who "experiences headaches two times a week that lasted three hours or more, where they needed to go home and lay down," would be unable to sustain full time competitive work. A.R. 67. Nowhere in Dr. Aryal's opinion, however, does she state that Plaintiff's headaches are so severe that she must go home and lay down. Nowhere does Dr. Aryal state that Plaintiff's headaches occur during the workday. The vocational expert's conclusion as to disability was therefore driven by facts introduced by Plaintiff's counsel during the hearing. The ALJ accorded Dr. Aryal's opinion no weight. A.R. 22.

Dr. Aryal's medical opinion was contradicted by the opinions of Drs. Green, Marella, and Disney, each of whom opined that Plaintiff had abilities that were greater than those in Dr. Aryal's opinion. A.R. 21. The ALJ therefore could discount Dr. Aryal's opinion for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

In giving Dr. Aryal's opinion no weight, the ALJ stated that the "opinion does not provide any specific work related physical limitations." A.R. 22. In effect, the ALJ discounted Dr. Aryal's opinion because it was conclusory and brief. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citation omitted). Dr. Aryal's opinion does not state that Plaintiff is unable to perform work eight hours per day for five days a week; instead, it merely states that Plaintiff's headaches limit her ability to

perform work-related activities. A.R. 949. The opinion is ambiguous as to the degree and debilitating effects of Plaintiff's headaches and silent as to their timing. Dr. Aryal's opinion provides nothing but a conclusory assertion that Plaintiff is limited in her ability to perform work-related activities. The Court concludes that the ALJ was warranted in disregarding Dr. Aryal's opinion. *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (finding that an ALJ need not accept a treating physician's opinion which is "brief and conclusory in form with little in the way of clinical findings to support [its] conclusion."). In addition, the ALJ noted that Dr. Aryal's opinion failed to indicate that the "limitation [can] reasonably be expected to result from objective clinical or diagnostic findings." A.R. 22. The ALJ could have disregarded Dr. Aryal's opinion on that basis alone. *See Bayliss*, 427 F.3d at 1216; *Orn*, 495 F.3d at 631 (listing factors relevant to evaluating a medical opinion, including the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole). The Court finds that the ALJ's decision to disregard Dr. Aryal's opinion was not legal error.

### 4. Ravi Bhalla, M.D.

Plaintiff argues that the ALJ failed to articulate sufficient reasons for giving limited weight to the opinion of her treating rheumatologist, Dr. Ravi Bhalla, M.D. Doc. 17 at 16. On September 26, 2011, Dr. Bhalla submitted a medical opinion in which he opined that Plaintiff's "chronic musculoskeletal pain, weakness, and fatigue" is her "primary disabling symptoms," and her "disability" is "based on joint pains and stiffness, fatigue, and muscle pain and weakness." A.R. 951. He indicated he "cannot determine the impact of symptoms in relation to [Plaintiff's] activities," but "do[es] not question [Plaintiff's] assertion that [she] is disabled for all competitive work requirements." A.R. 951. The ALJ accorded Dr. Bhalla's opinion little weight. A.R. 22.

Dr. Bhalla's medical opinion was contradicted by the opinions of Drs. Green, Marella, and Disney, each of whom opined that Plaintiff had abilities greater than those in Dr. Bhalla's opinion. A.R. 21. The ALJ therefore could discount Dr. Bhalla's opinion

for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

In giving Dr. Bhalla's opinion little weight, the ALJ stated that Dr. Bhalla's final statement in the opinion is a "vague, overgeneral conclusion [that] is not supported by the evidence of record." A.R. 22. The ALJ noted that Dr. Bhalla admits that the opinion is based on the claimant's subjective complaints. In addition, Dr. Bhalla failed to provide specific physical limitations, and admitted he "cannot determine the impact" of her symptoms "in relation to her activities." A.R. 22. For the reasons outlined above, the Court concludes that the ALJ did not commit legal error by discounting the brief, conclusory, unsupported medical opinion submitted by Dr. Bhalla, which was also inconsistent with the medical record.

Plaintiff does not argue that the ALJ should have accorded Dr. Bhalla's opinion controlling weight. Instead, she argues that Dr. Bhalla's opinion "is verification of symptoms that are consistent with the opinions of Drs. Perry, Swigert, and Aryal, as well [sic] the testimony of [Plaintiff] and her husband." Doc. 17 at 16-17. Plaintiff, in effect, argues that the Court should conclude from Dr. Bhalla's opinion that the ALJ's decision to discount the opinions of the other treating physicians and his ultimate decision in this case is inconsistent with the balance of the evidence. As explained above, however, the ALJ's decision will be set aside only if it is not supported by substantial evidence or is based on legal error. *Lewis*, 236 F.3d at 517 n.13. The Court concludes that the ALJ's decision is supported by substantial evidence and is not based on legal error.

### 5. State Agency Physicians.

Plaintiff argues that the ALJ committed legal error by according "some weight" to the opinions of the State Agency's reviewing physicians. Doc. 17 at 17. She asserts that the ALJ committed legal error by failing to provide "specific and legitimate reasons for crediting non-examining State Agency assessments over treating physician opinion." *Id*. Plaintiff is incorrect. As outlined above, the ALJ provided numerous specific and legitimate reasons, drawn from the medical record, to justify the ALJ's decision to credit

the opinions of Drs. Green, Marella, and Disney over the opinions of Plaintiff's treating physicians. Because the opinions of Drs. Green, Marella, and Disney were supported by independent clinical findings, they constituted substantial evidence. *Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.") (citation omitted). The Court concludes that the ALJ's decision to credit the opinions of Drs. Green, Marella, and Disney was not legal error.

### C. The ALJ Did Not Err in Evaluating Plaintiff's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if there is no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. A.R. 18. The ALJ then found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the RFC assessment. A.R. 18. In other words, the ALJ found Plaintiff's statements not credible to the extent she claims she is unable to perform past relevant work.

At the hearing Plaintiff testified that she quit her last job because she was unable to concentrate or remain alert and she was in pain, which caused her to make poor decisions. A.R. 43. Plaintiff also testified that she is unable to take most of the major drugs on the market to treat her fibromyalgia because she experiences strange side effects. A.R. 47. She stated that her lower back pain is very sharp and her pain is aggravated by repeated movements, such as housecleaning. A.R. 47. Plaintiff also testified that she gets headaches three or four times per week that require her to take

1  medication and go to sleep. A.R. 48. She also stated that she has numbness and tingling
2  in her hands and feet, which prevent her from typing for longer than 20 minutes at a time
3  or opening containers. A.R. 48-50. Plaintiff also testified that she needs to rest every 15
4  minutes if she is "doing something," that she can sit for an hour at most, that she can
5  stand for five minutes at most, that she can walk for 15-20 minutes at most, and that she
6  can lift 15 pounds at most. A.R. 52-53. She also stated that she can dust for 10-15
7  minutes or vacuum for five minutes at a time, but that regular household chores hurt her
8  back. A.R. 54. Plaintiff also stated that she is unable to concentrate and comprehend
9  things she reads, which explains her recent difficulty in completing a PhD program.
10 A.R. 55.

11       The ALJ gave the following reasons for finding Plaintiff's testimony not fully
12 credible: (1) Plaintiff's treatment regimen has been quite effective at managing her
13 symptoms; (2) medication has been effective at managing her symptoms with no adverse
14 side effects; (3) Plaintiff's restless leg syndrome and migraine headaches are "stable" and
15 she has been "doing very well" with her fibromyalgia; (4) physical examinations and
16 diagnostic studies generally reported "unremarkable" and "normal" results; (5) Plaintiff
17 engaged in many activities that are inconsistent with her allegations of disability; and
18 (6) inconsistencies exist in the record. A.R. 19-20. The ALJ supported each of these
19 reasons with many citations to the record.

20       Plaintiff contends that the following assertions made by the ALJ are not supported
21 by the record: the treatment regimen has been effective at managing her symptoms;
22 medication has been effective at managing her symptoms with no adverse side effects;
23 Plaintiff's restless leg syndrome and migraine headaches are stable. Doc. 21-22.
24 Plaintiff argues that the ALJ reached these conclusions by failing to view the record as a
25 whole and isolating only a portion of the medical record to support a desired conclusion.
26 Doc. 17 at 21; *see Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) ("In determining
27 whether the Commissioner's findings are supported by substantial evidence, we must
28 review the administrative record as a whole, weighing both the evidence that supports the

1  evidence and that detracts from the Commissioner's conclusion."). The Court disagrees.
2  The ALJ cited many diagnostic reports, physical examinations, medical notes, and
3  statements made by Plaintiff to medical service providers to substantiate each reason
4  given for the credibility determination. A.R. 18-20. "If the evidence can reasonably
5  support either affirming or reversing the Secretary's conclusion, the court may not
6  substitute its judgment for that of the Secretary." *Id*. at 720-21 (citation omitted). After a
7  careful review of the record, the Court concludes that the evidence reasonably supports
8  the ALJ's credibility determination.

9  Plaintiff also argues that her daily activities are not inconsistent with her alleged
10 limitations and that the ALJ erred by relying on them to impugn her credibility. Doc. 17
11 at 24. As outlined above, Plaintiff testified that she could not perform household chores
12 without breaks every few minutes. She also testified that she must lie down for hours
13 after grocery shopping in order to recover her strength. A.R. 57. She also testified that
14 she needs to rest every 15 minutes if she is "doing something" and that she can sit for an
15 hour at most, stand for five minutes at most, walk for 15-20 minutes at most, and lift 15
16 pounds at most. A.R. 52-53. The ALJ noted, however, that Plaintiff is the primary
17 caretaker for her elderly mother who recently suffered a stroke. In addition, Plaintiff
18 exercises three times a week for an hour by swimming laps. A.R. 488, 923. These
19 activities seem inconsistent with the limitations Plaintiff alleged in her testimony. The
20 Court cannot agree that the ALJ committed legal error by relying on these daily activities
21 to undermine her credibility.

22 Plaintiff disputes the validity of the "inconsistencies observed in the record" upon
23 which the ALJ relied. Doc. 17 at 26. For example, the ALJ observed that a treating
24 physician had recorded in his notes "[Plaintiff's] gait is abnormal in so much as she
25 shuffles and is unable to fully lift her leg and I am uncertain whether this is due to effort
26 or pathology." A.R. 964. Plaintiff asserts that there was no finding of questionable
27 effort, but the physician clearly raised that possibility in the note. Because there are more
28 than a sufficient number of specific, clear, and convincing reasons to justify the ALJ's

credibility determination, the Court will not address Plaintiff's remaining arguments regarding her credibility.

### D.     The ALJ Did Not Err in His Use of Third Party Report.

Plaintiff's husband, Donald Childers, submitted two third-party function reports. A.R. 176-83, 196-203.  The ALJ gave his reports great weight because they detailed extensive activities of daily living and physical capacities as demonstrated by her regular activities.  A.R. 21.  Plaintiff claims that the ALJ erred in the use of her husband's reports.  Doc. 17 at 27.  Because Mr. Childers reported that his wife experienced unpredictable periods of joint and muscle pain and that she needed time to recuperate from the performance of normal daily activities, Plaintiff argues that it was error to accord the reports great weight and claim that the reports support the ALJ's conclusion of no disability.  *Id*.  The Court disagrees.  Mr. Childers' reports provide many examples of social and physical activities in which Plaintiff engages notwithstanding her limitations, including swimming, cleaning the house, preparing meals, shopping, walking, driving, attending church, hosting bible study sessions, going out alone, attending sporting events, reading, and watching television.  Although Mr. Childers reported that his wife had decreased abilities to perform such activities, these limitations are reflected in the limited RFC – the RFC states that Plaintiff cannot engage in the full range of sedentary work. A.R. 17-18.  Because Mr. Childers' report is consistent with the RFC, the Court concludes that the ALJ did not commit legal error in relying on it.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**.  The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 23rd day of April, 2014.

_____
David G. Campbell
United States District Judge